**NATIONAL LIFE INSURANCE COMPANY AND SUBSIDIARIES, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**No. 1446, Docket 95–4025.**

United States Court of Appeals, Second Circuit.

Argued June 12, 1996.

Decided June 12, 1996.

Amended Dec. 20, 1996.

Arthur L. Bailey, Washington, DC (J. Walker Johnson, Steptoe & Johnson, Washington, DC, James K. McQueston, Montpelier, VT, on the brief), for Petitioner–Appellant.

Edward T. Perelmuter, Washington, DC (Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, David I. Pincus, Department of Justice, Washington, DC, on the brief), for Respondent–Appellee.

Before: LUMBARD, ALTIMARI, and WALKER, Circuit Judges.

WALKER, Circuit Judge:

National Life Insurance Company and its subsidiaries (collectively "National Life") ap-

peal from a decision of the Tax Court (Mary Ann Cohen, *Judge* ), denying National Life's petition to increase its deduction from its gross income for policyholder dividends for 1984 by $40,762,000, pursuant to § 808(c)(1) of the Internal Revenue Code, 26 U.S.C. § 808(c)(1). *National Life Ins. Co. v. Commissioner,* 103 T.C. 35, 103 T.C. No. 615, 1994 WL 696244 (1994). In 1984, Congress required that life insurance companies switch from the "reserve method" of accounting to the "accrual method" when calculating the amount of each company's deduction from its gross income for dividends paid to policyholders. National Life filed an income tax return for 1984, claiming as a deduction under § 808(c)(1) all policyholder dividends that it had paid in 1984 as well as those that had accrued in 1984 but that would not be paid until 1985. The Commissioner of Internal Revenue determined that National Life could deduct on its 1984 return only approximately one-half of the dividends that had been paid in 1984, plus all of the dividends that had accrued in 1984 but that would not be paid until 1985.

National Life subsequently filed a petition in the Tax Court, contending that § 481(a) of the Internal Revenue Code and § 216(b)(1) of the Deficit Reduction Act of 1984, Pub.L. No. 98–369, 98 Stat. 758, permit National Life to deduct in 1984 all policyholder dividends that were paid in 1984. The Tax Court disagreed and denied the petition. We affirm.

## BACKGROUND

This case concerns the extent to which National Life is entitled to take a double deduction—one in 1983 and one in 1984—from its gross income for dividends paid to life insurance policyholders. National Life issues whole life insurance policies. Like many other insurance companies, National Life issued certain policies under which policyholders could receive dividends, thereby allowing those policyholders to participate in National Life's surpluses. Unlike many of its competitors, however, National Life did not require its policyholders to be policyholders on the anniversary date of the policy in order to receive that year's dividend. In-

stead, National Life followed a practice whereby it guaranteed dividends on a pro rata, monthly basis. Thus, if a policy terminated three months before the anniversary date (nine months after the last anniversary), the policyholder would be entitled to seventy-five percent (*i.e.,* nine-twelfths) of the dividend for that policy year.

Because they are an expense to life insurance companies, policyholder dividends may be deducted. Traditionally, life insurance companies calculated these deductions using the "reserve method." *See* I.R.C. § 811(b) (1983) (repealed 1984). Under the reserve method, the life insurance company would place amounts to be paid in the future to policyholders in a special reserve. As the Tax Court explained, the deduction would then "equal[ ] the policyholder dividends paid during the year, plus the reserve for policyholder dividends at the end of the year, less the reserve at the end of the preceding year." *National Life,* 103 T.C. No. at 620. This method provided life insurance companies with a substantial benefit: they effectively could deduct the amounts to be paid to policyholders well in advance of actual payment. Thus, "life insurance companies received the benefit of including the full amount of policyholder dividends reserves in the deduction calculation, regardless of whether any portion of their reserves satisfied the criteria for accrual under the accrual method of accounting." *Id.* at 621.

In 1984, Congress eliminated this timing benefit by amending the Internal Revenue Code to require that insurance companies make policyholder dividend deductions in accordance with the accrual method of accounting, which allows deductions only for dividends that accrue during the taxable year. I.R.C. § 808(c)(2). Under the accrual method, most insurance companies, because they do not guarantee the payment of policyholder dividends, may not deduct those dividends until the time that such dividends are actually paid. National Life, however, is able to deduct its dividends an average of six months prior to actual payment. This is because under National Life's guaranteed dividend policy, National Life becomes obligated to pay one-twelfth of the dividend each month.

For instance, assume a policy has an anniversary date of April 1. On July 1, National Life has guaranteed payment of one-fourth of the dividend; on October 1, National Life has guaranteed payment of one-half of the dividend; and on January 1 of the following year, National Life has guaranteed three-fourths of the dividend. Assuming that policy anniversary dates are distributed evenly throughout the calendar year, National Life, at the end of each year, will have become obligated to pay an average of fifty percent (six-twelfths) of the following year's policyholder dividends.

This tangled scheme of tax accounting is further complicated by I.R.C. § 481. Because different tax accounting methods provide for different dates on which income or deductions are recognized, a switch in accounting methods can create a situation in which a taxpayer is able to deduct the same expense—or is required to recognize the same income—in two separate tax years. This was true of Congress's decision to require insurance companies to switch to the accrual method for dividend deductions. Under the reserve method, most companies already had deducted in 1983 the dividends that the company would pay in 1984. By switching to the accrual method, those companies would be able to deduct the same dividends again in 1984—the year in which the payments were actually made.

Section 481, however, generally forbids such a result. Instead, that section requires that where a taxpayer has made a change in its method of accounting "there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted." I.R.C. § 481(a)(2).

Congress, however, in an effort to alleviate the impact of the new accounting method, enacted the Deficit Reduction Act of 1984 ("DEFRA") § 216(b)(1), Pub.L. No. 98–369, 98 Stat. 758, which provides:

IN GENERAL.—Except as provided in paragraph (2), in the case of any insurance company, any change in the method of accounting (and any change in the method of computing reserves) between such company's first taxable year beginning after December 31, 1983, and the preceding taxable year which is required solely by the amendments made by this subtitle shall be treated as not being a change in the method of accounting (or change in the method of computing reserves) for purposes of the Internal Revenue Code of 1954.

National Life contends that this section prohibits the creation of an opening balance adjustment and that the plain meaning and intent of § 216(b)(1) is to allow all insurance companies to deduct from their 1984 gross income all policyholder dividends paid in 1984. The Commissioner, on the other hand, contends that § 216(b) only allows insurance companies to deduct from their 1984 gross income those policyholder dividends that accrued and were paid in 1984.

## DISCUSSION

We review the tax court's determinations of fact for clear error and its determinations of law, including its interpretation of federal statutes, de novo. *Estate of Herrmann v. Commissioner,* 85 F.3d 1032, 1035 (2d Cir.1996).

The principal issue before us on this appeal is the effect of DEFRA § 216(b)(1) on the provisions of I.R.C. §§ 481(a) and 808(c). As National Life notes, a change from the reserve to the accrual method of accounting requires a taxpayer to make a two-step adjustment: first, the taxpayer must compute the deduction in the year of change under the accrual method, and second, the taxpayer must remove from the deduction calculated under the accrual method any amounts that had been deducted in the prior year. *See* 1 George C. Bauernfeind, *Income Taxation: Accounting Methods & Periods* § 32.03, at 32–9 (1994). In this case, the first step represents the mandate of § 808(c)(1): the policyholder dividend deduction is limited to those dividends accrued during 1984.[1] The

---

1. Section 808(c) states:

   Amount of deduction.—

(1) In general.—Except as limited by paragraph (2), the deduction for policyholder dividends for any taxable year shall be an amount

second step represents the § 481(a) adjustment: a taxpayer generally may not deduct in a taxable year those amounts that were deducted in a prior taxable year simply because of a change in accounting.

The parties agree that § 216(b)(1) eliminated the second step of the adjustment and that therefore it is permissible for National Life to deduct any policyholder dividends that accrued in 1984, even if they were deducted under the reserve method in 1983. What divides the parties in this case is how to make the calculation required by the first step, *i.e.*, how to calculate the amount of policyholder dividends that accrued in 1984 under § 808(c)(1), and what effect § 216(b)(1) has on that calculation.

National Life contends that the first step of the change to accrual accounting—computing the amount of the deduction in any given year—is accomplished by the taxpayer subtracting the amount of the dividends that had accrued as of the end of the previous tax year but had not yet been paid (the "opening balance") from the sum of the dividends accrued but not yet paid as of the end of the subject tax year ("closing balance") and the dividends actually paid during the subject tax year. The Commissioner disagrees, and argues that § 808(c)(1) requires that the taxpayer only calculate the amounts that accrued in the present year. Because it does not affect the outcome, for purposes of this appeal we assume that National Life is correct that such a calculation is required.

National Life also contends that when a taxpayer switches to the accrual method from another method, no opening balance exists—because there is no closing balance for the prior year—and that the taxpayer must make an "opening balance adjustment" by calculating what the closing balance for the prior tax year would have been had the taxpayer been using the accrual method and using that as the opening balance for the new tax year. According to National Life, the opening balance adjustment is required because National Life changed its method of

accounting and, therefore, § 216(b)(1)'s language that "any change in the method of accounting . . . required solely by the amendments made by this subtitle shall be treated as not being a change in the method of accounting" forbids the Commissioner from requiring an opening balance adjustment. National Life argued that since it had an opening accrual balance of $0 on January 1, 1984, it may deduct the amount of its accrued closing balance of policyholder dividends plus those dividends it paid during 1984. We believe that National Life's argument elevates form over substance and that we should not give § 216(b)(1)'s language the broad scope that National Life assigns to it.

■ We start with the foremost canon of statutory construction: "[t]he plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quotation and brackets omitted); *see Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992); *Belloff v. Commissioner*, 996 F.2d 607, 616 (2d Cir. 1993). Section 808(c)(1) limits the policyholder deduction to those dividends "paid or accrued during the taxable year." The phrase "paid or accrued" is "construed according to the method of accounting upon the basis of which the taxable income is computed," I.R.C. § 7701(a)(25), which in the case of National Life is the accrual method, I.R.C. § 811(a). *See also In re Atlantic Coast Line R.R.*, 2 B.T.A. 892, 895 (1925) (noting that "paid or accrued" is to be construed as meaning either when accrued or when paid, but not both); *Capital Inv. v. Commissioner*, 43 T.C.M. (CCH) 572, 574 (1982) ("paid or accrued" means when accrued for an accrual basis taxpayer). Thus, § 808(c)(1) plainly limits National Life's policyholder dividend deduction to those dividends that actually

---

equal to the policyholder dividends paid or accrued during the taxable year.

(2) Reduction in case of mutual companies.—In the case of a mutual life insurance company, the deduction for policyholder divi-

dends for any taxable year shall be reduced by the amount determined under section 809.

As we explain below, the phrase "paid or accrued," as applied to National Life, means those dividends accrued in the taxable year.

accrued in 1984. *See E. Norman Peterson Marital Trust v. Commissioner*, 78 F.3d 795, 799 (2d Cir.1996) (noting that words in the I.R.C. can only be given meaning in relation to particular context of the Code).

National Life here seeks to have us expand the deduction also to include dividends accrued in 1983 but paid in 1984. Nothing in § 808(c)(1) supports such an expansion, however, and § 216(b)(1) cannot be read as expanding the § 808(c)(1) deduction to include dividends that accrued in other years. The language of § 216(b)(1) makes no mention of deduction, but only states that the change to accrual method accounting shall not be treated as a change in accounting method under the Internal Revenue Code.

 Furthermore, we do not read this command of § 216(b)(1) as forbidding the creation of an opening accrual balance. As National Life itself argues, an opening balance is always required to incorporate the amounts of income or deductions accrued during a given year. In most years, that balance is created by looking to the ending balance of the previous year. Because a taxpayer in its first year under the accrual method has no balance from the prior year, the balance must be created by determining what the closing balance would have been if the taxpayer had used the accrual method the year before.

National Life, however, argues that prior case law and § 216(b)(1) require that this opening balance be zero. We disagree. We hold that neither prior case law nor § 216(b)(1) forbid the Commissioner from requiring National Life to create an opening balance for 1984 that reflects those dividend obligations accrued in 1983. The legislative history of I.R.C. § 808(f) [2] reveals Congress's intent to extend the full benefit of § 216(b)(1) only to insurance companies that did not guarantee policyholder dividends. Specifically, § 216(b)(1) was:

> granted with respect to the accounting change for policyholder dividends, on the assumption that insurance companies would continue to follow their general business practice in declaring policy dividends

at the end of a year to be payable on policy anniversaries during the following year.... The "fresh start" for the change in policyholder dividend accounting was intended to mitigate the detriment caused taxpayers by the statutory change in such accounting; to the extent the detriment caused by the statutory change is mitigated in fact by a company's own change in business practices, the "fresh start" was not intended to give a company *additional* tax benefits.

Staff of the Joint Comm. on Taxation, 98th Cong., General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 610–11 (Comm. Print 1985) (emphasis added). To avoid granting to National Life, which guarantees dividends to its policyholders, an additional benefit that Congress never intended, and consistent with the accrual requirements of § 808(c)(1), we will *not permit National Life to deduct in 1984* those dividends that accrued in 1983, but only those that accrued in 1984.

### CONCLUSION

For the foregoing reasons, we affirm the decision of the Tax Court.

---

**2.** *See Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 380–381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969) ("Subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction.").