*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0100p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

DOW A. HUFFMAN (06-2134/2135) and KIMBERLEE
H. WOLFORD (06-2135/2136), Individually and as
Personal Representatives of the Estate of Neil A.
Huffman; SANDRA E. HUFFMAN (06-2134); ETHEL
M. HUFFMAN (06-2135); DOUGLAS M. WOLFORD
(06-2136); JAMES A. PATTERSON (07-1180);
DOROTHY A. PATTERSON (07-1180),
                    *Petitioners-Appellants,*

            *v.*

COMMISSIONER OF INTERNAL REVENUE,
                    *Respondent-Appellee.*

Nos. 06-2134/2135/2136;
07-1180

—————————————

On Appeal from the United States Tax Court.
Nos. 2845-04; 2848-04; 2847-04; 2846-04.

Argued: January 29, 2008

Decided and Filed: March 4, 2008

Before: SUHRHEINRICH and ROGERS, Circuit Judges; BELL, Chief District Judge.[*]

—————————————

## COUNSEL

**ARGUED:** Mark F. Sommer, GREENEBAUM, DOLL & McDONALD, Louisville, Kentucky, for
Appellant. Michelle B. Smalling, UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellee. **ON BRIEF:** Mark F. Sommer, GREENEBAUM, DOLL & McDONALD,
Louisville, Kentucky, for Appellant. Michelle B. Smalling, Jonathan S. Cohen, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

—————————————

[*]The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan,
sitting by designation.

1

———————————

**OPINION**

———————————

ROGERS, Circuit Judge.  The Tax Court upheld the determination by the Commissioner of Internal Revenue that the correction of a consistently repeated inventory accounting error in this case amounted to a "change in method of accounting" under I.R.C. § 481.  Section 481 permits correction of accounts for otherwise time-barred years.  Because the Commissioner properly determined that § 481 applies, we affirm.

Taxpayers are shareholders of various new and used car dealerships.  For a period of ten to twenty years, the dealerships employed the same accountant to calculate the value of year-end inventory using the dollar-value, link-chain, "last in, first out" method.  During that time, the accountant consistently omitted a computational step required by the relevant tax statutes and regulations.  That error generally resulted in an understatement of gross income and decreased tax liability for taxpayers, although if carried through consistently the error would create offsetting increased liability in later years.

In 1999, the Commissioner of Internal Revenue commenced an examination of the dealerships' tax returns and identified the accountant's error.  The Commissioner revalued the dealerships' inventories and made corresponding adjustments to reported gross income for certain years.  Included in the Commissioner's adjustments were income amounts attributable to years closed by the applicable statute of limitations.  Under I.R.C. § 481, the Commissioner is authorized to adjust a taxpayer's taxable income in an open year to reflect amounts attributable to years for which the applicable statute of limitations has expired, so long as a "change in method of accounting" has occurred.

Based in part on the income adjustments with respect to the time-barred years, the Commissioner issued notices of federal income tax deficiency to taxpayers with respect to open years.  Taxpayers filed a petition with the United States Tax Court seeking a redetermination of the deficiencies.  Taxpayers challenged the propriety of the Commissioner's adjustments under § 481 with respect to otherwise time-barred years, arguing that the Commissioner's correction of the accountant's computational error is not a "change in method of accounting."  Taxpayers argued that the Commissioner's inventory revaluations constitute a correction of "mathematical error" or "computational error," and that such corrections are expressly excluded from the regulatory definition of "change in method of accounting."  *See* Treas. Reg. § 1.446-1(e)(2)(ii)(b).  The Tax Court held that the Commissioner's § 481 adjustments were permissible.  *See* 126 T.C. 322 (2006).  Taxpayers challenge this determination.

**I.**

Taxpayers Dow A. and Sandra E. Huffman, James A. and Dorothy A. Patterson, Douglas M. and Kimberlee H. Wolford, and Neil A. and Ethel M. Huffman are married couples.[1]  At least one member of each couple owns stock in one or more of four S corporations[2] in the "Huffman Group," informally referred to as Huffman Nissan, Huffman Volkswagen, Huffman Dodge, and Huffman Chrysler.

———————————————————

[1]Taxpayer Neil A. Huffman died during the pendency of this appeal.  His estate is represented by taxpayers Dow A. Huffman and Kimberlee H. Wolford.

[2]An S corporation is a "pass-through" entity.  The corporation's income is not taxed to the corporation itself; it is passed through to its shareholders on a *pro rata* basis.  *See* I.R.C. §§ 1366, 1368.

Each Huffman Group corporation sells new and used automobiles in the Louisville area. For tax purposes, the corporations compute yearly gross income by subtracting the cost of goods sold from sales revenue. Treas. Reg. § 1.61-3(a). As merchants, the corporations must compute the value of year-end inventory to determine the cost of goods sold. Treas. Reg. §§ 1.471-1, 1.446-1(c)(2)(i). And to compute the value of year-end inventory, the cost of goods available during the year must be allocated between goods sold during the year and goods remaining in inventory at the end of the year. *E.g.*, Boris I. Bittker, Martin J. McMahon, Jr. & Lawrence A. Zelenak, *Federal Income Taxation of Individuals* ¶ 39.06[3], at 39-67 (3d ed. 2002); Stephen F. Gertzman, *Federal Tax Accounting* ¶ 6.08, at 6-83 (2d ed. 1993). In certain cases, a cost-flow assumption is used to make this allocation. Gertzman, *supra*, ¶ 6.08[1], at 6-83.[3] Here, the Huffman Group elected to use the "last in, first out" ("LIFO") cost-flow assumption. *See* I.R.C. § 472. The elections were effective as follows: (1) Huffman Nissan: June 30, 1979; (2) Huffman Volkswagen: December 31, 1979; (3) Huffman Dodge and Huffman Chrysler: December 31, 1989.

The LIFO assumption treats the last goods acquired as the first goods sold. Gertzman, *supra*, ¶ 6.08[2], at 6-84. "The objective of the LIFO method is to match relatively current costs against current revenues to compute a meaningful gross profit." *Id.* ¶ 7.02[1], at 7-4. As a general matter, LIFO provides a tax advantage to firms during periods of rising prices and increasing inventories. *See* Bittker, McMahon & Zelenak, *supra*, ¶ 39.06[3], at 39-69; David W. LaRue, *LIFO Recapture on C-to-S Conversions: Filling the Gaps and Ameliorating the Deficiencies of Section 1363(D)*, 59 Tax Law. 1, 20 (2005). Because, in rising markets, later-acquired inventory is more expensive than earlier-acquired inventory, the LIFO assumption results in a lower cost of year-end inventory. In turn, the lower inventory cost results in a higher cost of goods sold, lower reported profits, and decreased tax liability. *See* Bittker, McMahon & Zelenak, *supra*, ¶ 39.06[3], at 39-69. Thus, the tax advantage of LIFO is derived from the taxpayer's deferral of gains attributable to the sale of the lower-cost, earlier acquired inventory. *See id.*; Larue, *supra*, at 20. The deferred gains, however, will ultimately be recognized upon liquidation of the inventory items to which the lower costs have been allocated. *See* Gertzman, *supra*, ¶ 7.02[1], at 7-5.

There is more than one method for determining the LIFO value of year-end inventory, but common among all LIFO methods are the following three steps: (1) the inventory must be separated into groups or "pools" of similar items; (2) it must be determined whether there has been a quantitative change in the inventory of each pool during the relevant period; and (3) the value of any increase ("increment") in the quantity of each pool must be determined. Gertzman, *supra*, ¶ 7.04[1], at 7-30. To carry out these steps, the Huffman Group utilized the dollar-value, link-chain method.[4] The following two paragraphs briefly summarize this technical accounting method, only a general understanding of which is necessary to resolve the dispositive issue in this case. For those less familiar with the intricacies of inventory accounting for tax purposes, a methodical and helpful description of the dollar-value, link-chain LIFO method is contained in the Tax Court's opinion. *See* 126 T.C. 322, 325–33 (2006).

---

[3]As Gertzman explains:

> [W]hen an inventory consists of a large number of essentially similar or fungible goods, practical problems arise as to how the aggregate cost of these goods should be allocated between goods sold during the year and goods remaining on hand at the end of the year. For financial accounting purposes, these problems are resolved by using assumptions as to which costs should be assigned to goods sold and which costs should be assigned to ending inventory.

Gertzman, *supra*, ¶ 7.01, at 7-3.

[4]The parties stipulate that each Huffman Group corporation elected the dollar-value, link-chain method.

The dollar-value approach to LIFO measures the change in the quantity of an inventory pool in terms of dollars, rather than physical units. *See* Treas. Reg. § 1.472-8(a). Under the dollar-value approach, any change in the quantity of dollars invested in an inventory pool over the taxable year is determined by comparing the aggregate base-year cost of the items in the pool at the beginning of the year to the aggregate base-year cost of the items in the pool at the end of the year. Gertzman, *supra*, ¶ 7.04[3][b], at 7-45. The base-year cost of an item in a pool is the cost of the item as of the base date—the first day of the first year for which LIFO is adopted. *Id.*; Treas. Reg. § 1.472-8(a).

The tax regulations authorize three methods for computing the base-year cost of an inventory pool and the value of any increment in the pool. *See* Treas. Reg. § 1.472-8(e). Implicated in this case is the "link-chain" method. Under that method,

> the current-year cost and the preceding year's cost (referred to as the item's "prior-year cost") of each item are compared. This comparison is used to compute a one-year index, referred to as the current-year's index. Each year's current-year index is multiplied (or "linked") to all preceding years' current-year indexes to arrive at a cumulative price index that relates back to the taxpayer's base year.

1 Leslie J. Schneider, *Federal Income Taxation of Inventories* § 14.02[3][b] (2007). Once the cumulative price index is calculated, the current-year cost of the year-end inventory is divided by the cumulative price index to arrive at the base-year cost of the year-end inventory. *E.g.*, I.R.S. Priv. Ltr. Rul. 8008012 (Nov. 23, 1979).[5] For years in which an increment is found (that is, the base-year cost of the ending inventory exceeds the base-year cost of the beginning inventory), the tax regulations provide that the increment must be "adjusted for changing unit costs or values by reference to a percentage, relative to base-year-cost, determined for the pool as a whole." Treas. Reg. § 1.472-8(a).[6] Under the link-chain method, the increment is adjusted (or "indexed") by multiplying the increment by the cumulative price index. I.R.S. Priv. Ltr. Rul. 8008012 (Nov. 23, 1979). The value of the indexed increment is then added to the beginning year inventory value to arrive at the LIFO value of the year-end inventory.

In periods of rising prices and increasing inventories, a failure to index the increment generally leads to an understatement of the value of year-end inventory, a corresponding overstatement of cost of goods sold, and a resulting understatement of gross income. *See* Bittker, McMahon & Zelenak, *supra*, ¶ 39.06[5], at 39-71; *cf. Primo Pants Co. v. Comm'r*, 78 T.C. 705, 723 (1982). Although the income deferred as a result of the failure to index will ultimately be recognized upon liquidation of the inventory pool (assuming that the improper method continues to be applied), a consistent failure to index serves to defer the reporting of income for a period of time greater than would be the case under a proper application of the dollar-value, link-chain method.[7]

---

[5] Though the relevant tax regulations do not contain examples illustrating the link-chain computation procedures, Private Letter Ruling 8008012 offers an unofficial description.

[6] This adjustment serves to value the increment at current costs. *See* Gertzman, *supra*, ¶ 7.04, at 7-30; Larue, *supra*, at 23–25 n.54 ("Indexes developed using the double-extension or link-chain methods are internal indexes that reflect changes in inventory replacement costs actually experienced by the taxpayer."). The Tax Court has noted that "[t]he rationale behind increasing the increment to current-year cost is that even under the LIFO method, inventory cannot be carried at a cost existing earlier than the year of its acquisition." *Fox Chevrolet, Inc. v. Comm'r*, 76 T.C. 708, 732 n.15 (1981).

[7] Income is deferred rather than permanently omitted because a "consistent undervaluation of ending inventory acts to defer income. . . . Since each year's closing inventory becomes the opening inventory for the succeeding year, the system will automatically self-correct whenever the closing inventory is correctly valued." *Primo Pants Co. v. Comm'r*, 78 T.C. 705, 723 (1982); *see also* Bittker, McMahon & Zelenak, *supra*, ¶ 39.06[5], at 39-71.

In the instant case, the same certified public accountant performed the dollar-value, link-chain LIFO method for each Huffman Group corporation. However, in years where an increment existed, the accountant consistently failed to index the increment as required by the tax regulations. Generally, this error led to an under-reporting of income for the Huffman Group and its stockholders, reducing taxpayers' tax liability for certain years. The accountant consistently repeated the error with respect to each corporation, beginning in the year that each corporation elected the link-chain, dollar-value method. Apart from any statute of limitations effects, the error only deferred the reporting of income, it did not permanently avoid the reporting of any income.

At some point after the Huffman Group filed their 1999 federal income tax returns, the Commissioner of Internal Revenue commenced an examination of the corporations' tax returns for that year and years prior. After identifying the accountant's mistake, the Commissioner revalued each corporation's year-end inventory values. Because of the statute of limitations prescribed in I.R.C. § 6501, the earliest year (or "first year in issue") that the Commissioner could make adjustments to the corporations' tax returns was 1998 for Huffman Nissan, Huffman Dodge, and Huffman Chrysler, and 1997 for Huffman Volkswagen. Accordingly, the Commissioner proceeded to adjust the corporations' gross incomes—on the basis of the inventory revaluations—in two steps.

First, for the first year in issue and each subsequent year, the Commissioner adjusted the corporations' gross incomes to reflect the recalculation of beginning and ending inventories for the year. Taxpayers do not challenge the propriety of this adjustment. The changes in gross income related to the Commissioner's first adjustment are as follows: (1) Huffman Nissan: $17,251 and $41,273 for tax years 1998 and 1999, respectively; (2) Huffman Volkswagen: $49,056, $35,484, and $575,137 for tax years 1997, 1998 and 1999, respectively; (3) Huffman Dodge: ($37,752) and $256,315 for tax years 1998 and 1999, respectively; and (4) Huffman Chrysler: $76,402 and ($88,687) for tax years 1998 and 1999, respectively.

Second, for the first year in issue only, the Commissioner made an additional adjustment under I.R.C. § 481. That statute allows the Commissioner to adjust a taxpayer's taxable income in an open year to reflect amounts attributable to adjustments to closed years (years for which the statute of limitations has already expired) so long as a "change in method of accounting" has occurred. *See Graff Chevrolet Co. v. Campbell*, 343 F.2d 568, 571–72 (5th Cir. 1965); Gertzman, *supra*, ¶ 8.02, at 8-5. This second adjustment served to increase the taxable income for the first year in issue for each corporation by the cumulative amount of income attributable to the inventory recalculations for all years prior to the first year in issue. The changes in gross income related to this second adjustment are as follows: (1) Huffman Nissan: $794,993 for tax year 1998; (2) Huffman Volkswagen: $273,115 for tax year 1997; (3) Huffman Dodge: $348,762 for tax year 1998; and (4) Huffman Chrysler: $337,423 for tax year 1998.

Based on these corporate income adjustments, the Commissioner issued notices of federal income tax deficiency to each couple on December 19, 2003. Deficiencies were assessed against taxpayers in the following amounts: (1) Dow and Sandra Huffman: $36,757 and $9,413 for tax years 1998 and 1999, respectively; (2) the Pattersons: $35,542 for tax year 1998; (3) the Wolfords: $33,422 and $1,966 for tax years 1998 and 1999, respectively; and (4) Neil and Ethel Huffman: $131,408, $535,065, and $304,033 for tax years 1997, 1998, and 1999, respectively. On February 17, 2004, each couple filed a petition with the United States Tax Court seeking a redetermination of the deficiencies. Taxpayers challenged the propriety of the second adjustment (the § 481 adjustment), arguing that the adjustment was improper because no "change in method of accounting" had occurred.

On May 16, 2006, the Tax Court ruled in favor of the Commissioner. *See* 126 T.C. 322 (2006). The Tax Court concluded that the Commissioner's correction of the accountant's error constituted a "change in method of accounting" under § 481 and, accordingly, that the

Commissioner's § 481 adjustments were permissible. The Tax Court rejected the contention that the inventory revaluations were corrections of "mathematical error" to which § 481 does not apply, reasoning that the accountant had not made an error in arithmetic, but rather had omitted a computational step. In doing so, the Tax Court applied a definition of "mathematical error" found in a separate section of the Internal Revenue Code.

On appeal, taxpayers challenge the Tax Court's determination that the Commissioner's correction of the accountant's error is a "change in method of accounting." Taxpayers do not contest the existence of the accountant's error or the accuracy of the Commissioner's calculations.

## II.

Because the Commissioner's correction of the accountant's error is a "change in method of accounting," we affirm. This case involves the timing of income recognition. The accountant's computational error improperly deferred the reporting of certain taxable income; it did not permanently avoid the reporting of any income. The Commissioner's correction simply causes the improperly deferred income to be recognized at a time earlier than would be the case under continued use of the accountant's erroneous method. The correction thus determines the timing of income recognition and properly constitutes a "change in method of accounting" for purposes of § 481 and Treas. Reg. § 1.446-1.

At the outset, it is clear that the language and purposes of the statutory terms of § 481, without looking at the language of implementing regulations, permit and indeed strongly support the application of § 481 to the facts of this case. Taxpayers do not argue otherwise, but rather rely on the provisions of implementing treasury regulations, discussed subsequently below. Section 481 provides in relevant part:

> (a) General rule.— In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change") —
>
> > (1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then
> >
> > (2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a *change in the method of accounting* initiated by the taxpayer.

I.R.C. § 481(a) (emphasis added). It cannot seriously be argued that the consistent correction in this case to the repeated identical error in calculating yearly carryover inventory values is not a "change in method of accounting," in the plain English sense of the words.

It is also consistent with the core purposes of § 481 to apply that provision in this case. Section 481 is designed to address certain difficulties that arise when a taxpayer changes accounting methods, and those are the identical difficulties that arose in this case. "Because different tax accounting methods provide for different dates on which income or deductions are recognized, a switch in accounting methods can create a situation in which a taxpayer is able to deduct the same expense—or is required to recognize the same income—in two separate tax years." *Nat'l Life Ins. Co. & Subsidiaries v. Comm'r*, 103 F.3d 5, 7 (2d Cir. 1996); *see also* Bittker, McMahon & Zelenak, *supra*, ¶ 39.09[1], at 39-81. Section 481 addresses these difficulties by authorizing the

Commissioner to adjust a taxpayer's income in an open year to reflect amounts attributable to years for which the applicable statute of limitations has expired. *See* Gertzman, *supra*, ¶ 8.02, at 8-5; *Graff Chevrolet*, 343 F.2d at 572 ("[S]ection 481 would be virtually useless if it did not affect closed years.").[8] The statute thus "ensure[s] that items of income and expense are neither duplicated nor omitted in computing taxable income following a change in method of accounting." Gertzman, *supra*, ¶ 8.01, at 8-3. In so doing, § 481 "prevent[s] either a distortion of taxable income or a windfall to the taxpayer arising from a change in accounting method when the statute of limitations bars reopening of the taxpayer's earlier returns." *Suzy's Zoo v. Comm'r*, 273 F.3d 875, 883 (9th Cir. 2001). The application of § 481 prevents such a distortion in this case. If the correct—or the incorrect—calculation were made consistently throughout the years, then all of the income would be properly taxed, albeit at different times. Only by correcting the error in midstream would some of the income escape taxation altogether by operation of the statute of limitations. This is exactly what § 481 was intended to avoid.

Taxpayers accordingly do not rely directly on the language of § 481 or its purposes, but rather focus on the treasury regulation interpreting § 481 to argue that the section does not apply. That regulation, however, ultimately supports the Commissioner. Treas. Reg. § 1.446-1 provides both inclusive and exclusive rules for determining when a "change in method of accounting" has occurred. The inclusive aspect of the regulation is broad enough to encompass the corrections at issue in this case, and—contrary to the primary argument of the taxpayers—the exclusive aspect does not require a different result.

The treasury regulation in its inclusive aspect covers the corrections here because the corrections are an overall change affecting the timing of tax payment with respect to inventories. Treas. Reg. § 1.446-1 provides that "[a] change in the method of accounting includes a change in the overall plan of accounting for gross income or deductions or a change in the treatment of any material item used in such overall plan." Treas. Reg. § 1.446-1(e)(2)(ii)(a). Regarding inventories, the regulation specifically provides that "a change in the treatment of any material item used in the overall plan for identifying or valuing items in inventory is a change in method of accounting." § 1.446-1(e)(2)(ii)(c). For purposes of these rules, a "material item" is "any item that involves the proper time for the inclusion of the item in income or the taking of a deduction." § 1.446-1(e)(2)(ii)(a).

As the Eleventh Circuit has observed, "[t]he essential characteristic of a 'material item' is that it determines the timing of income or deductions." *Knight-Ridder Newspapers, Inc. v. United States*, 743 F.2d 781, 798 (11th Cir. 1984). In this case, the change from the accountant's erroneous method to the proper dollar-value, link-chain method does just that. The accountant erred by consistently failing to index the increment every year beginning with the year of election for each corporation. This error generally led to a lower year-end inventory value and a corresponding decrease in taxable income, but the error would have self-corrected upon liquidation of the inventory pool (assuming continued application). As a result, the error only served to defer the reporting of income, it did not lead to the permanent omission of income. The upshot of the Commissioner's

---

[8] As the Fifth Circuit has explained,

> [t]here is no necessary conflict between section 481 and the statute of limitations. Until the year of the accounting change, the Commissioner has no claim against the taxpayer for amounts which the taxpayer should have reported in prior years. The statute of limitations is directed toward stale claims. Section 481 deals with claims which do not even arise until the year of the accounting change.

*Graff Chevrolet*, 343 F.2d at 572; *see also* Note, *Problems Arising from Changes in Tax-Accounting Methods*, 73 Harv. L. Rev. 1564, 1576–77 (1960) ("Section 481, therefore, does not hold the taxpayer to any income which he has any reason to believe he has avoided, and does not frustrate the policy that men should be able, after a certain time, to be confident that past wrongs are set at rest.").

correction (and proper application of the dollar-value, link-chain method going forward) is that income that was improperly deferred under the accountant's erroneous method will be recognized at a time earlier than would be the case under continued use of the accountant's method. The Commissioner's correction thus constitutes a "change in the treatment of [a] material item used in" the overall plan of valuing inventory because the change from the accountant's erroneous method to the proper dollar-value, link-chain method determines the timing of income recognition.

An illustrative example provided in the regulation itself is instructive in this regard. *See* § 1.446-1(e)(2)(iii). In Example 6, the regulation describes a scenario where a taxpayer has for many taxable years valued inventories at cost improperly. Specifically, the taxpayer improperly computed cost (and thus the value of inventory) by failing to include overhead costs. This improper computation was contrary to the requirements of the tax code and regulations. After laying out this scenario, the regulation provides that a change requiring the appropriate allocation of overhead costs in the value of inventory is a change in accounting method because "it involves a change in the treatment of a material item used in the overall practice of identifying or valuing items in inventory." *See* § 1.446-1(e)(2)(iii) ex.6. The circumstances of this case are analogous and require the same conclusion. For a number of years, the accountant consistently and improperly computed the value of inventory, and this improper computation was contrary to statutory and regulatory requirements. The Commissioner's correction appropriately values the inventory increment, and thus involves a change in the treatment of a material item used to value inventory.

The Tax Court has consistently applied the regulation in this way. In *Primo Pants Co. v. Commissioner*, 78 T.C. 705 (1982), the taxpayer erroneously discounted the value of its inventory over a number of years. In response, the Commissioner revalued the inventory to correct the errors and made income adjustments under § 481 to reflect those revaluations. *Id.* at 706–14. Taxpayer argued that the § 481 adjustments were improper because the Commissioner's correction of its erroneous valuation method did not constitute a change in accounting method. *Id.* at 714. The Tax Court disagreed. The court stated that the relevant inquiry is "whether the accounting practices permanently avoided the reporting of income over the taxpayer's lifetime income or merely postponed the reporting of income." *Id.* at 723. The court went on to explain:

> The consistent undervaluation of ending inventory acts to defer income. . . . The cumulative income over the period of years involved will be the same total, but income will be deferred each year until the closing inventory is finally corrected. . . . Thus, we conclude that petitioner's erroneous writedowns of its inventory do involve timing questions: the proper time for taking a deduction (indirectly through cost of goods sold) and for reporting income (income from sales). . . . In conclusion, we hold that [the Commissioner's] revaluations of petitioner's inventory . . . constitute changes in petitioner's method of accounting.

*Id.* at 723–25.

In *Wayne Bolt & Nut Co. v. Commissioner*, 93 T.C. 500 (1989), the Tax Court reaffirmed the holding of *Primo Pants*. In *Wayne Bolt & Nut*, the taxpayer valued its inventory using a "lower of cost or market" approach. *Id.* at 501. To determine the amount of its ending inventory for each year prior to 1982, taxpayer used a sampling method. *Id.* at 503. In 1982, taxpayer took a complete physical count of its inventory and discovered that it had previously written off approximately $2 million worth of inventory that still existed in its warehouse. *Id.* at 504–05. Taxpayer's flawed accounting method resulted in understated inventory values and a consistent under-reporting of income, and the error would have self-corrected over time. *Id.* at 508–09. To remedy the miscalculations, the taxpayer increased its opening and ending inventory for the current year, and adjusted inventory values and filed amended returns for fiscal years ending in February 1979, 1980, and 1981. *Id.* at 505. Though most of the inventory understatements discovered in 1982 were made

prior to 1979, taxpayer took the position that adjustments to income for years prior to 1979 were barred by the statute of limitations. *Id.* The Commissioner argued that taxpayer's inventory revaluations were a "change in method of accounting" and, accordingly, that § 481 adjustments were required. *Id.* at 506. The Tax Court concluded that the inventory recalculations made by taxpayer constituted a "change in method of accounting." *Id.* at 511–13.

*Primo Pants* and *Wayne Bolt & Nut* are persuasive on the facts of this case. Like the instant case, both cases involve an error in inventory accounting that led to a consistent undervaluation of year-end inventory. As a result of those undervaluations, income was deferred for a period of time, but not permanently omitted. Because the later change in accounting practice altered the timing of income recognition, the § 481 adjustments were permissible. Further, the holdings of *Primo Pants* and *Wayne Bolt & Nut* are consistent with the purpose of § 481. As discussed, § 481 was enacted to "prevent either a distortion of taxable income or a windfall to the taxpayer arising from a change in accounting method when the statute of limitations bars reopening of the taxpayer's earlier returns." *Suzy's Zoo*, 273 F.3d at 883. In both *Primo Pants* and *Wayne Bolt & Nut*, application of § 481 prevented the taxpayers from experiencing a windfall due to the permanent exclusion of certain income. *See Primo Pants*, 78 T.C. at 714 ("If the opening inventory for 1973 is revalued as petitioner requests, but without the section 481 adjustments, petitioner will receive a windfall."); *Wayne Bolt & Nut*, 93 T.C. at 506. Similarly, it is uncontested here that, absent the § 481 adjustments, taxpayers stand to avoid taxation on nearly $2 million of income, notwithstanding the fact that that income eventually would have been reported under the accountant's erroneous method (and, indeed, already would have been reported had the dollar-value, link-chain method been applied properly at the outset).

Taxpayers rely primarily on the exclusive aspect of the treasury regulation, which defines "change in method of accounting" *not* to include

> *correction of mathematical or posting errors, or errors in the computation of tax liability* (such as errors in computation of the foreign tax credit, net operating loss, percentage depletion, or investment credit). Also, a change in method of accounting does not include adjustment of any item of income or deduction that does not involve the proper time for the inclusion of the item of income or the taking of a deduction.

§ 1.446-1(e)(2)(ii)(b) (emphasis added). Taxpayers argue that the corrections involved in this case are corrections of "mathematical errors" or "errors in the computation of tax liability." Like the Tax Court in *Wayne Bolt & Nut*, we are not persuaded. In *Wayne Bolt & Nut*, the Tax Court explicitly rejected the taxpayer's argument that the corrections of the inventory accounting errors were corrections of "mathematical error," explaining:

> [The] systemic flaws in petitioner's pre-1982 system simply cannot be described as mere mathematical or posting errors. Prior to 1982, petitioner consistently used a method of determining inventory which resulted in premature write-downs of ending inventory. This constituted a method of accounting.

*Wayne Bolt & Nut*, 93 T.C. at 512. Taxpayers read the Tax Court below to have adopted a definition of "mathematical error" that is limited to arithmetic calculation errors, a definition that they argue is too narrow. We do not need to bless or criticize the Tax Court's general definition of "mathematical error," however, because we are fully satisfied that the regulation precludes application of either the "mathematical error" or the "computational error" exception on the facts of this case.

To define "correction of mathematical error" to include the correction in this case would lead to a contradiction within the regulation. In effect, taxpayers argue that "mathematical error" arises any time there is a discrepancy between a computed value and the correct value. This

definition would, for example, include the circumstance described in Example 6. As discussed, Example 6 of § 1.446-1(e)(2)(iii) describes a situation where a taxpayer, consistently and for a number of years, improperly computed the value of inventory by omitting overhead costs. The taxpayer's error would thus be considered a "mathematical error" under taxpayers' definition, yet the regulation provides that a correction of that error constitutes a "change in method of accounting." The example thus implicitly rejects the idea that the "mathematical error" or "computational error" exception applies in those circumstances. The facts of the instant case are sufficiently analogous to Example 6 to warrant a conclusion that neither exception applies here.

Bolstering this conclusion, moreover, is the fact that this case involves an issue of regulatory interpretation. The central dispute between the parties is whether the correction of a specific accounting error constitutes a "change in method of accounting," as that phrase is defined in a regulation promulgated by the Treasury Department. Accordingly, we are here dealing with the interpretation of rules of inclusion and exclusion that are "creatures" of the Treasury Department's own making. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997). In this case, the Commissioner has interpreted those rules as including within the ambit of § 481 the correction of the accountant's erroneous method. Although taxpayers provide their own interpretation, that interpretation is certainly not, for the reasons stated above, compelled by the plain language of the regulation. The Supreme Court held in *Auer* that an agency's interpretation of its own regulation, presented in that case in a brief to the Court, was "controlling" where the interpretation reflected a "fair and considered judgment" and was not "plainly erroneous or inconsistent with the regulation." *Id.* at 461–62. We cannot conclude that the Commissioner's interpretation of what constitutes a "change in method of accounting" (and therefore not "mathematical" or "computational" error) is "plainly erroneous or inconsistent with the regulation," and the Commissioner's interpretation is accordingly entitled to controlling weight. *See id.*; *United States v. Cinemark USA, Inc.*, 348 F.3d 569, 578–79 (6th Cir. 2003).

Taxpayers' reliance on two pre-1970 published opinions of this court is misplaced. *See Thompson-King-Tate, Inc. v. United States*, 296 F.2d 290 (6th Cir. 1961); *Wood-Mosaic Co. v. United States*, 160 F. Supp. 636 (W.D. Ky. 1958), *aff'd*, 272 F.2d 944 (6th Cir. 1959) (per curiam). Neither case involved facts analogous to those presented here. Moreover, both cases were decided before the treasury regulation provisions relied upon were promulgated in 1970. The regulatory language involving correction of mathematical and computational errors, along with the illustrative examples, was added to the regulation in 1970. *See* T.D. 7073, 1970-2 C.B. 98. The pre-1970 regulation did not define "material item," nor did it contain an exclusion for "mathematical error." *See* 25 Fed. Reg. 11,708, 11,709 (Nov. 26, 1960).

Finally, the asserted inadvertence of the accountant's error is not relevant to the determination of whether there was a "change in method of accounting." Taxpayers rely on the Court of Claims decision in *Korn Industries, Inc. v. United States* for the proposition that inadvertence should be considered in determining whether § 481 applies. *See* 532 F.2d 1352, 1356 (Ct. Cl. 1976). *Korn Industries*, however, has been characterized by the Federal Circuit as a case of "posting error"[9] and thus is not directly relevant to taxpayers' arguments regarding mathematical and computational error. *See Diebold, Inc. v. United States*, 891 F.2d 1579, 1582 (Fed. Cir. 1989). In any event, there is simply no basis in the text of § 481 or § 1.446-1 for a conclusion that inadvertence or intent is relevant to the inquiry of whether a change in accounting method has occurred. As the Tax Court noted in *Superior Coach of Florida, Inc. v. Commissioner*, 80 T.C. 895, 913 n.5 (1983), to the extent that *Korn Industries* provides for an exception to § 481 for the

---

[9]In *Korn Industries*, the Court of Claims held that a "change in method of accounting" had not occurred when a taxpayer, for four years, deviated from the method of accounting for inventories that it had previously used by omitting three items from its finished goods inventory. The three items, however, were included in raw materials inventory, work-in-process inventory, and supplies inventory. 532 F.2d at 1353.

correction of good-faith mistakes, commentators have questioned the authority for such an exception.  Indeed, such considerations are inconsistent with the very purpose of § 481—to allow for all adjustments necessary to prevent amounts from being omitted or duplicated as a result of a change in accounting method.

## III.

For the foregoing reasons, the judgment of the Tax Court is affirmed.