**NEW YORK LIFE INSURANCE COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 10 Civ. 4701(VM).**

United States District Court,
S.D. New York.

April 19, 2011.

John David Lovi, Steptoe & Johnson, LLP, New York, NY, Arthur L. Bailey, James Walker Johnson, Steptoe & Johnson, LLP, Washington, DC, for Plaintiff.

Michael J. Byars, U.S. Attorney's Office, New York, NY, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff New York Life Insurance Company ("New York Life") brought this action against defendant United States of America ("Government") seeking a refund of certain Federal income taxes that New York Life paid for the taxable years 1988 and 1990 through 1995. The Government now moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") to dismiss the complaint. For the reasons listed below, the Court GRANTS the Government's motion.

## I. MOTION TO DISMISS STANDARD

In assessing a motion to dismiss under Rule 12(b)(6), dismissal of a complaint is appropriate if the plaintiff has failed to offer factual allegations sufficient to render the asserted claim plausible on its face. *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To state a facially-plausible claim, a plaintiff must plead enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II. *DISCUSSION* [1]

Under New York law, New York Life must distribute annually a portion of its surplus earnings ("Annual Dividend") to the owners of "participating insurance polic[ies] and annuity ... contract[s]" ("Policies"). N.Y. Ins. Law. § 4231(a). Each individual Policy provides that the Annual Dividend becomes payable on the anniversary of the Policy "if the Policy is then in force and all premiums due have been paid [prior] to such anniversary." (Compl.¶ 19.) In each of the years 1990 through 1995, New York Life credited a policyholder's account with the Annual Dividend on the later of (1) thirty days before the anniversary of the Policy; or (2) the date on which all premiums due had been received.

Although New York Life credited a policyholder's account up to thirty days before the Policy anniversary, in most cases, New York Life did not pay the Annual Dividend until the Policy anniversary. As a result, for Policies with anniversaries in February through December, the date New York Life credited the policyholder account and the date the company actually paid the Annual Dividend fell within the same taxable year. In contrast, for Policies with anniversaries in January ("January Anniversary Policies"), New York Life credited the policyholder account in December of one year but did not pay the Annual Dividend until January of the following year ("January Annual Dividend"). In other words, the January Annual Dividends were credited and paid in different taxable years.

In addition to requiring New York Life to pay an Annual Dividend, New York law allows New York Life to distribute a portion of its surplus earnings as a one-time dividend to policyholders when a Policy terminates by death, maturity or surrender ("Termination Dividend"). *See* N.Y. Ins. Law § 4231(a)(4). If a Policy terminated after New York Life credited the policyholder's account with the Annual Dividend (*i.e.*, the later of thirty days before the anniversary of the Policy or the date on which all premiums due had been received), the policyholder received both an Annual Dividend and a Termination Dividend in the year in which the Policy terminated. Alternatively, if a Policy terminated before New York Life credited the policyholder's account with the Annual Dividend, the policyholder received only a Termination Dividend in that year. Finally, if a Policy did not terminate in a given year, the policyholder received only an Annual Dividend. In sum, New York Life expected to pay in any given year either an Annual Dividend or a Termination Dividend, or both, on each Policy. Each December, New York Life estimated the minimum amount, consisting of the smaller of the two dividends, to be paid on each Policy in the following year.

Under the Internal Revenue Code ("Code" or "I.R.C."), a life insurance company may deduct from its Federal income tax return "policyholder dividends paid or accrued during the taxable year." 26 U.S.C. (I.R.C.) § 808(c). Accordingly, in each of the taxable years 1990 through 1995, New York Life deducted from its Federal income tax return (1) January Annual Dividends that New York Life credit-

---

1. The facts below are taken from the complaint ("Complaint" or "Compl."), documents attached to the Complaint as exhibits and documents incorporated into the Complaint by reference. The Court accepts these facts as true for the purposes of ruling on a motion to dismiss. *See Spool v. World Child Int'l* *Adoption Agency*, 520 F.3d 178, 180 (2d Cir. 2008). However, allegations that are no more than legal conclusions "are not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1950. Except where specifically referenced, no further citation to these sources will be made.

ed to its policyholders in December of 1990 through 1995 but did not pay until January of 1991 through 1996; and (2) the smaller of the Annual Dividend and the Termination Dividend that New York Life expected to pay on each Policy in the first 8 1/2 months of the taxable years 1991 through 1996.[2] The Internal Revenue Service ("IRS") audited New York Life's returns for 1990 through 1995 and disallowed the deductions described above, limiting New York Life's deductions to policyholder dividends actually paid during the taxable year. New York Life paid the assessed tax deficiencies and interest.

On April 18, 2000, New York Life filed a claim for a refund of Federal income tax it paid for 1990 through 1993. New York Life also claimed a credit carryback to 1988. On November 13, 2002, New York Life filed a second refund claim for 1994 and 1995. Both refund claims related, in part, to the disallowed deductions for policyholder dividends. After the IRS denied all of the claims described above, New York Life filed this action seeking a refund of $99,664,009 in assessed taxes and interest.

It is undisputed that New York Life may deduct from its Federal income tax returns "policyholder dividends paid or accrued during the taxable year." I.R.C. § 808(c). The parties disagree only as to when January Annual Dividends and Termination Dividends accrue under the Code. Under an accrual method of accounting, which life insurance companies such as New York Life must employ, *see* I.R.C. § 811(a)(1), a liability becomes deductible when each of three conditions has been satisfied: (1) "all the events have occurred that establish the fact of the liability"; (2) "the amount of the liability can be determined with reasonable accuracy"; and (3)

"economic performance has occurred." 26 C.F.R. ("Treas. Reg.") § 1.461–1(a)(2); *see also* I.R.C. § 461(h). Consequently, the deductions described above were proper only if New York Life has offered factual allegations sufficient to support a plausible inference that all three conditions were met.

▇ The first condition, known as the "all events test," requires that the liability be "fixed and absolute," " 'unconditional' " rather than "contingent." *United States v. Hughes Props., Inc.,* 476 U.S. 593, 600, 106 S.Ct. 2092, 90 L.Ed.2d 569 (1986). "[A]lthough expenses may be deductible before they have become due and payable, liability must first be firmly established." *United States v. Gen. Dynamics Corp.,* 481 U.S. 239, 243, 107 S.Ct. 1732, 95 L.Ed.2d 226 (1987).

Two leading Supreme Court cases illustrate the difference between fixed and contingent liabilities for purposes of the all events test. First, in *Hughes Properties,* the Court held that a liability fixed in amount by state law accrued under the Code even though payment would not occur until an indefinite time in the future. 476 U.S. at 601–06, 106 S.Ct. 2092. The taxpayer in that case was a casino located in Nevada, which operated a slot machine known as "progressive" because the jackpot increased as money was gambled on it. *Id.* at 595, 106 S.Ct. 2092. A Nevada regulation prevented the casino from reducing the jackpot. Stated differently, the law guaranteed that the casino would pay the jackpot that had accumulated on the progressive machine. The Court held that the Code permitted the casino to deduct the increase in the progressive jackpot from one taxable year to the next as an accrued liability, even though the jackpot

---

**2.** New York Life deducted only those dividends it expected to pay in the first 8 1/2 months of the following year to conform to Section 461(h)(3)(A)(ii)(II) of the Code.

had not yet been distributed to a winner. *Id.* at 601–06, 106 S.Ct. 2092.

Second, in *General Dynamics,* the Court held that an employer's liability to reimburse its employees for medical care was contingent even though the medical services had already been provided. 481 U.S. at 244–45, 107 S.Ct. 1732. General Dynamics Corporation had deducted from its Federal income tax return its liability to reimburse employees for medical care received during the final quarter of the taxable year, but for which the employees had not yet submitted claims. *Id.* at 240, 107 S.Ct. 1732. The Court found that the liability did not accrue until claims were actually submitted, furnishing "the last link in the chain of events creating liability for purposes of the 'all events test.'" *Id.* at 245, 107 S.Ct. 1732.

■ This Court finds the case at hand to be more akin to *General Dynamics* than to *Hughes Properties.* The Policies provide that "*on each policy anniversary* any share of divisible surplus apportioned to [the Policy] will be payable as a dividend *if* the Policy is then in force and all premiums due have been paid [prior] to such anniversary." (Compl. ¶ 19 (emphasis added).) Thus, under the terms of the Policies, even if a policyholder had paid all premiums due, New York Life had no obligation to pay him an Annual Dividend if he surrendered the Policy on the day before the Policy anniversary. Unlike in *Hughes Properties,* where each play of the slot machine guaranteed an increased jackpot, here liability was not fixed until a sequence of events had been completed. The "last link in the chain of events creating liability" did not occur until the anniversary date of the Policy. *Gen. Dynamics,* 481 U.S. at 245, 107 S.Ct. 1732. Because New York Life's obligation to pay arose only if the Policy remained in force on its anniversary, i.e., the policy

had not been terminated, its liability was merely "contingent" prior to that date.

New York Life does not argue that the contract terms require otherwise. Rather, it contends that its liability to pay an Annual Dividend on a January Anniversary Policy became unconditionally fixed when it credited the policyholder's account with the dividend. The Court disagrees. While New York Life has alleged facts that could establish that it paid all dividends that had been credited to an account as a matter of practice, it has not alleged facts that could support a plausible inference that it was *required* to do so. The Second Circuit has firmly rejected the position that a company's internal recordkeeping practices can fix liability for purposes of the all events test. *See Comm'r of Internal Revenue v. H.B. Ives,* 297 F.2d 229, 230 (2d Cir.1961) ("[N]either the resolution of respondent's board of directors, nor the entry on its books, in themselves establish the proper accrual of the claimed liability.... Deduction could be claimed only when the liability to pay became certain."). Rather, the all events test looks to the date that liability is "firmly established." *Gen. Dynamics,* 481 U.S. at 243, 107 S.Ct. 1732. In this case, liability was not firmly established until the date fixed by the contract, i.e., the anniversary date. That New York Life recorded the liability on its books up to thirty days prior does not alter the result. Its choice to post the entry when it did, for whatever accounting convenience or other reasons, was entirely voluntary. As long as New York Life was under no legal obligation to so record the liability, it could just as easily have reversed the practice at any time prior to the anniversary date. To that extent, the liability was contingent upon the continuation of an internal recordkeeping practice that was not required by law.

New York Life's claim that it was entitled to deduct the smaller of the Annual

Dividend or the Termination dividend similarly fails. As explained above, an Annual Dividend was a contingent liability until the anniversary of the Policy. New York Life does not dispute that a Termination Dividend was a contingent liability because the Policy could remain in force for the entire taxable year. As a result, as of December 31 of each taxable year at issue, New York Life did not have an obligation to pay either an Annual Dividend or a Termination Dividend in the following taxable year because neither dividend was unconditionally due. It follows that the all events test was not satisfied in this case, and consequently that the Termination Dividends were not deductible under the Code.

Because the Court concludes that the all events test was not satisfied, the Court does not need to reach the other two of the conditions that must be satisfied to qualify for deductibility, namely, whether "the amount of the liability can be determined with reasonable accuracy," *see* Treas. Reg. § 1.461–1(a)(2), or whether the "recurring item" exception to the economic performance requirement applies, *see* Treas. Reg. § 1.461–5.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 12) of defendant United States of America to dismiss the complaint of plaintiff New York Life Insurance Company is GRANTED.

The Clerk of Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**