11-2394-cv
New York Life Ins. Co. v. United States

# United States Court of Appeals
### FOR THE SECOND CIRCUIT

———————————

August Term, 2012

(Argued: September 6, 2012     Decided: August 1, 2013)

Docket No. 11-2394-cv

———————————

NEW YORK LIFE INSURANCE COMPANY,

*Plaintiff-Appellant*,

—v.—

UNITED STATES OF AMERICA,

*Defendant-Appellee*.

———————————

B e f o r e:

JACOBS, *Chief Judge*, CARNEY, *Circuit Judge*, and GLEESON, *District Judge*.[*]

———————————

New York Life Insurance Company appeals the District Court's dismissal of its complaint pursuant to Fed. R. Civ. P. 12(b)(6). In its complaint, New York Life alleged that the Internal Revenue Service wrongfully denied it certain federal

---

[*] The Honorable John Gleeson, United States District Judge for the Eastern District of New York, sitting by designation.

income tax deductions taken pursuant to Code Section 808, which permits a deduction for policyholder dividends "paid or accrued during the taxable year." On its returns for tax years 1990 through 1995, New York Life claimed deductions for amounts it projected it would pay as policyholder dividends in the following calendar years, asserting that its liability for these dividends had accrued under the deduction-timing rules of Treasury Regulation § 1.461-1(a)(2)(i). After the IRS denied the deductions, New York Life paid the taxes in full, then sought to recover the corresponding tax payment of approximately $99.66 million, plus interest. The parties agree that the "all-events" test governs and that New York Life may claim the deductions in a particular tax year only if "all the events have occurred that establish the fact of the liability" in that tax year. We agree with the Service and the District Court that New York Life's complaint fails to state a plausible claim that the all-events test was satisfied as to the two types of dividend-related deductions at issue here.

AFFIRMED.

––––––––––––––––––

ARTHUR L. BAILEY (J. Walker Johnson, Shannen W. Coffin, Amanda J. P. Varma, *on the brief*), Steptoe & Johnson LLP, Washington, D.C., *for Plaintiff-Appellant New York Life Insurance Company*.

MICHAEL J. BYARS (Sarah S. Normand, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, N.Y., *for Defendant-Appellee United States of America*.

––––––––––––––––––

SUSAN L. CARNEY, *Circuit Judge*:

This case concerns the timing of two deductions that New York Life Insurance Company ("New York Life" or the "Company"), a calendar-year, accrual-basis taxpayer, claimed on its federal income tax returns for tax years 1990 through 1995. In its returns for each of those years, the Company deducted the amounts of two types of policyholder dividends that it treated as accrued expenses in the tax

2

years at issue, but which it did not pay until the following years. The Internal Revenue Service ("IRS" or the "Service") disallowed the deductions, ruling that the Company could not deduct these dividend amounts until the tax year of payment. In the Service's view, the deductions did not satisfy the "all-events" test, which governs the deductibility of accrued but unpaid expenses. See Treas. Reg. § 1.461-1(a)(2)(i).

New York Life contested the ruling, paid the taxes owed, and challenged the Service's determination by filing a refund claim for approximately $99.66 million (its calculation of the alleged overpayment) plus interest in the United States District Court for the Southern District of New York. The District Court (Marrero, *Judge*) granted the Service's motion to dismiss the complaint, concluding that New York Life failed to (and could not) allege that for the tax years in which they were deducted, the liabilities satisfied the "all-events" test. New York Life Ins. Co. v. United States, 780 F. Supp. 2d 324 (S.D.N.Y. 2011).

For the reasons more fully discussed below, we agree with the District Court that, with respect to the two claimed deductions, "all events" had not yet occurred to fix the Company's liability in the tax years in which the Company took the deductions. Because the Company's liability for the dividends was contingent, it did not satisfy the regulatory requirements for deduction of an accrued expense. We therefore AFFIRM the judgment of the District Court.

3

## BACKGROUND

The following statement of facts is drawn primarily from the allegations of New York Life's complaint.[1]

### 1.    The Two Types of Policyholder Dividends at Issue

New York Life is a mutual life insurance company organized under the laws of the State of New York.  Like many such entities, the Company issues some policies that entitle their holders to receive a "policyholder dividend"—a share of the Company's annual "divisible surplus."  Compl. ¶ 18; see N.Y. Ins. Law § 4231(a). During the period from 1990 through 1995, the Company distributed such policyholder dividends both at set periods and upon the occurrence of certain events, such as the death of the insured.  Because the Internal Revenue Code allows life insurance companies to deduct from gross income "an amount equal to the policyholder dividends paid or accrued during the taxable year," 26 U.S.C. § 808(c), the Company deducted the amount of these dividends.

At issue here is the timing of the Company's deductions related to two categories of policyholder dividends:  (1) the Company's "Annual Dividend for January Policies"; and (2) its "Termination Dividend."

---

[1] We also refer on occasion to the terms of five New York Life insurance policies that the Company presented as samples during its refund proceeding before the Service, on which the Complaint relies, and which the Service submitted in connection with its motion to dismiss.  See Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005) ("In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint.").  The five sample policies are indistinguishable from each other in all ways bearing on our decision.

## A.    The Annual Dividend for January Policies

In compliance with New York law, see N.Y. Ins. Law § 4231, and the terms of its policies, the Company paid certain of its whole life policyholders an Annual Dividend on the relevant policy's anniversary date.[2]  This Annual Dividend comprised the policyholder's share of the Company's surplus.

The timing of the Company's distribution of the Annual Dividend to eligible policyholders depended on the policy's anniversary date and the schedule for the policyholder's premium payments.  According to the terms of the policies at issue here, New York Life paid an Annual Dividend to a policyholder only if, as of the policy's anniversary date, "the policy [was] then in force and all premiums due ha[d] been paid to that anniversary."  Compl. ¶ 34.  For a policyholder paying monthly premiums, for instance, payment of the twelfth premium in any single twelve-month period would keep the policy in force through its anniversary date.

The Company's practice in the relevant period was to *credit* a policyholder's account with the amount of the Annual Dividend on a date (the "Credit Date") that was before, but not more than thirty days before, the policy's anniversary date.  The credit would occur if, as of the Credit Date, the policyholder had paid all premiums necessary to keep the policy in force through its anniversary date.  New York Life

---

[2] Generally, a "whole life" (also called an "ordinary life" or straight life") insurance policy "remains in full force and effect for the life of the insured, with premium payments being made for the same period."  Harvey W. Rubin, Dictionary of Insurance Terms 358 (4th ed. 2000). A "term life insurance" policy, by contrast, "stays in effect for only a specified, limited period."  Id. at 517.

5

did not actually *pay* the dividend, however, until "the Credited Policy's anniversary date."[3]

For most policies—those with anniversary dates falling from February 1 through December 31—the Credit Date fell within the same calendar year as the anniversary date. For policies with January anniversary dates, however, the Credit Date and the anniversary date typically fell in different calendar (and thus tax) years.

The Company deducted from its gross income for tax year 1990 the cumulative Annual Dividends on policies that had Credit Dates in December 1990 and anniversary dates in January 1991. It did the same for tax years 1991 through 1995. We refer to this deduction as the deduction for the "Annual Dividend for January Policies."

B. <u>The Termination Dividend and the Minimum Dividend Liability Deduction</u>

Certain policies eligible for the Annual Dividend were also eligible, under New York Life's practices, to receive an amount the Company called a "Termination Dividend." This was a share of the Company's surplus that it paid the policyholder or beneficiary upon the policy's termination, whether the termination occurred because the policy matured, the policyholder died, or the policyholder surrendered

---

[3] Thus, if a policyholder contracted to pay monthly premiums on a policy with a May 15 anniversary date, she would be obligated to pay her twelfth monthly premium on or before April 15 to keep the policy in force through its anniversary date. If the April payment was timely made, the Company would credit the policyholder's account with the Annual Dividend on April 15.

the policy to obtain its cash value.[4]  Although the Termination Dividend, like the Annual Dividend, was drawn from the Company's surplus, the two dividends were calculated on different bases.

In the complaint, New York Life alleged that, in every year from 1990 through 1995, it made one of three possible combinations of dividend payments to eligible policyholders: (1) an Annual Dividend, (2) a Termination Dividend, or (3) *both* an Annual Dividend and a Termination Dividend.  It reasoned as follows:  If the terminating event—the policy's maturity, or the policyholder's surrender of the policy or death—occurred *before* it credited the policy with the Annual Dividend, the Company would pay the Termination Dividend only.  If the terminating event occurred *after* New York Life credited the policy with the Annual Dividend, the Company would pay *both* the Annual and the Termination Dividends.  And, if no terminating event occurred in a given year, the policyholder would receive only the Annual Dividend.  Therefore, New York Life alleged, under any scenario during these years, it paid at least the lesser of the Annual or Termination Dividend to these policyholders.[5]

New York Life's accrual and payment methods for the Termination Dividend were as follows.  In each December from 1990 through 1995, the Company calculated

---

[4] Each of the sample policies recognizes a holder's right to surrender the policy for its cash value at any time.

[5] The complaint is silent as to whether New York Life paid a Termination Dividend when a policy lapsed for nonpayment of premiums.

7

the Annual Dividends and Termination Dividends it expected to pay in the following year to eligible policyholders. The Company then determined, on a policy-by-policy basis, the lesser of the two amounts. It claimed the aggregate of those amounts on its returns for 1990 through 1995 as a deduction for an accrued dividend under Code Section 808. For present purposes, we will refer to this claimed deduction as the Company's deduction for the "Minimum Liability Dividend."[6]

## 2. Prior Proceedings

New York Life timely filed tax returns for the years 1990 through 1995, claiming in each year a deduction for the Annual Dividend for January Policies and a deduction for the Minimum Dividend Liability. Upon audit, the IRS rejected both claimed deductions, ruling that the Company was entitled to deduct these policyholder dividends only in the years of actual payment. New York Life paid the resulting deficiency and then filed a claim for a refund, which the Service denied. The instant action in the United States District Court for the Southern District of New York ensued.

---

[6] To avoid making a duplicate deduction, New York Life excluded from its calculation of the Minimum Liability Dividend deduction the amount it claimed as a deduction for the Annual Dividend for January Policies. Additionally, for reasons related to other tax concerns not at issue here, New York Life claimed the Minimum Liability Dividend deduction with respect only to payments on policies whose anniversary dates fell within the first eight and one-half months of the following taxable year. See Code § 461(h)(3)(A)(ii); Treas. Reg. § 1.461-5(b)(1)(ii). Because we conclude that neither the Annual Dividend for January Policies deduction nor the Minimum Liability deduction satisfied the "all-events" test, this practice does not affect our decision and we need not address it further.

8

In its complaint, the Company sought principally a refund of $99.66 million plus interest, claiming that it was entitled to accrue and deduct the two dividend-related amounts in each of the six tax years at issue.[7] The District Court granted the Service's motion to dismiss under Fed. R. Civ. P. 12(b)(6). The court concluded that the deductions did not satisfy the "all-events" test, a requirement under Treasury Regulation § 1.1.461-1(a)(2)(i) for deduction of an accrued expense. See New York Life, 780 F. Supp. 2d at 329. In the court's view, New York Life failed to allege sufficient facts from which to infer that, in the tax year for which the deduction was claimed, all events had occurred to establish the fact of the liability. As to the Annual Dividend for January Policies, the Company's claim fell short because it "had no obligation to pay [the policyholder] an Annual Dividend if he surrendered the Policy on the day before the Policy anniversary." Id. at 328. As to the Minimum Dividend Liability, the Company's claim fell short because "as of December 31 of each taxable year at issue, New York Life did not have an obligation to pay either an Annual Dividend or a Termination Dividend in the following taxable year because neither dividend was unconditionally due." Id. at 329.

## DISCUSSION

We review the grant of a motion to dismiss *de novo*, accepting as true the complaint's factual assertions and drawing all reasonable inferences in the plaintiff's favor. Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C., 711 F.3d 68, 74 (2d Cir. 2013).

---

[7] New York Life also claimed a related credit carryback to tax year 1988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

## 1. The All-Events Test

Section 808(c) of the Internal Revenue Code permits life insurance companies to deduct from gross income "an amount equal to the policyholder dividends paid *or accrued* during the taxable year." Code § 808(c) (emphasis added). To determine whether liability for a policyholder dividend has "accrued" in a taxable year, we look to IRS regulations governing the timing of deductions for accrual basis taxpayers like New York Life.[8] <u>See</u> <u>Ferguson v. Comm'r</u>, 29 F.3d 98, 102-03 (2d Cir. 1994). Treasury Regulation § 1.461-1(a)(2)(i) provides that, for such taxpayers, "a liability . . . is incurred, and generally is taken into account for Federal income tax purposes, in the taxable year in which [1] all the events have occurred that establish the fact of the liability, [2] the amount of the liability can be determined with reasonable accuracy, and [3] economic performance has occurred with respect to the liability."[9]

---

[8] Life insurance companies are generally required to operate on an accrual basis for federal income tax purposes. <u>See</u> Code § 811.

[9] This tripartite rule is echoed also in Treasury Regulation § 1.446-1, which provides in relevant part that "[u]nder an accrual method of accounting, a liability (as defined in § 1.446-1(c)(1)(ii)(B)) is incurred, and generally is taken into account for Federal income tax purposes, in the taxable year in which all the events have occurred that establish the fact of the liability, the amount

10

The Service and New York Life agree that this three-part inquiry governs the timing of a life insurance company's deduction of a policyholder dividend under Section 808. They disagree, however, about whether New York Life can satisfy the first prong of the inquiry, in which the taxpayer must show, before deducting a dividend, that "all the events have occurred that establish the fact of the liability."

Together, this prong and the second prong—that the amount of the liability be determinable "with reasonable accuracy"—comprise the "all-events" test. See United States v. Hughes Props., Inc., 476 U.S. 593, 600 (1986). The all-events test was first articulated in United States v. Anderson, 269 U.S. 422, 441 (1926), where the Supreme Court concluded that liability for a munitions tax accrued and became deductible in the taxable year in which "all the events . . . occur[ed] which fix[ed] the amount of the tax and determine[d] the liability of the taxpayer to pay it." That general rule appears to have prevailed until 1984, when Congress limited its application by imposing an additional "economic performance" requirement, further defining and restricting the circumstances in which a taxpayer could claim a deduction for an accrued but unpaid expense. See Deficit Reduction Act of 1984, Pub. L. 98-369, § 91(a), 98 Stat. 494, 600 (codified at 26 U.S.C. § 461(h)) (the "1984 Act"); United States v. Gen. Dynamics Corp., 481 U.S. 239, 243 n.3 (1987). Because we find that New York Life's complaint fails to state a plausible claim that the

of the liability can be determined with reasonable accuracy, and economic performance has occurred with respect to the liability." Id. § 1.446-1(c)(1)(ii)(A).

11

deductions at issue satisfied the first prong of the all-events test, we consider neither the second prong of the test (the "fixed amount" element), nor the statutory economic performance requirement and its exceptions.

Two seminal Supreme Court cases guide our analysis of the first prong of the all-events test. In United States v. Hughes Properties, Inc., 476 U.S. 593 (1986), a Nevada casino owner claimed a deduction related to its payout obligations on so-called "progressive" slot machines—machines that, with each play, ratchet up the available jackpot amount, until some patron wins the jackpot. Id. at 595. Nevada law prohibited the casino from reducing the amount of the jackpot payable on such a machine until a winner appeared and collected his reward. Id. at 596. Accordingly, the casino owner claimed a deduction each year for the marginal amount by which his liability for the jackpot had increased. Id. at 597. In the face of the IRS's objection to the practice, the Court considered whether "all events" had occurred to establish the fact of the casino owner's enhanced liability.

The Court determined that all such events had occurred, and permitted the deduction. It reasoned that the effect of the state law forbidding a jackpot reduction until payout to a winner "was to fix [the casino's] liability." Id. at 601. Although the casino owner did not know when or to whom it would be required to pay the jackpot amount, the casino "had a fixed liability for the jackpot which it could not escape," and the liability satisfied the all-events test. Id. at 602.

12

The following year, in <u>United States v. General Dynamics Corp.</u>, 481 U.S. 239 (1987), the Court rejected an employer's attempt to deduct a purportedly accrued liability for medical expenses reimbursements. General Dynamics, which self-insured with respect to its employee's medical coverage, required its employees to submit a claim form before it would reimburse an employee's medical expenses. <u>Id.</u> at 241. The company sought to deduct the cost of medical services that employees had received in the tax year at issue, but for which they had yet to submit claims forms. <u>Id.</u> at 241-41. The Court refused the deduction, explaining that, because filing the claim form was "crucial" to establishing the company's liability, the employee's receipt of medical services did not "constitute the last link in the chain of events creating liability for purposes of the 'all events' test." <u>Id.</u> at 244-45. "General Dynamics was . . . liable to pay for covered medical services *only* if properly documented claims forms were filed." <u>Id.</u> at 244. "It is fundamental to the 'all events' test," the Court instructed, "that, although expenses may be deductible before they have become due and payable, liability must first be firmly established. . . . [A taxpayer] may not deduct a liability that is contingent, [n]or . . . an estimate of an anticipated expense, no matter how statistically certain, if it is based on events that have not occurred by the close of the taxable year." <u>Id.</u> at 243-44.

These cases highlight that the all-events test is not satisfied, and a liability not established, by a statistical probability—however high—that the taxpayer will

13

ultimately pay the expense. Instead, the test requires that nothing further be needed to create a "fixed liability . . . which [the taxpayer cannot] escape." Hughes Props., 476 U.S. at 602; see Gen. Dynamics, 481 U.S. at 243-44. If the taxpayer's obligation remains in some way contingent—dependent on some discrete event that has not yet occurred—the deduction will not satisfy the all-events test and may be disallowed. Gen. Dynamics, 481 U.S. at 243; Hughes Props., 476 U.S. at 602.

2.      Application to the Annual Dividend for January Policies

Applying these principles, we conclude first that the Service properly disallowed New York Life's deduction for the Annual Dividend for January Policies. The Company's allegations did not support an inference that, as of the Credit Date, all events had occurred that established "the fact of the liability" for that dividend.

New York Life asserts that the last "event" for purposes of the all-events test occurred when, in the taxable year, the January policyholders paid the final premium sufficient to keep their policies in force through their anniversary dates in January.[10] It is true that the Credit Date for these January policies fell in the taxable year. Further, in the relevant tax years, many—perhaps even most—of those January policyholders received an Annual Dividend in January, based on a premium payment in the previous year.

---

[10] New York Life argued in the District Court that the final "event" fixing liability was the Company's crediting of the policyholder's account with the amount of the Annual Dividend, up to thirty days before the policy's anniversary date. The Company has abandoned this contention on appeal. See Appellant's Reply Br. at 9 ("New York Life's liability arises from the payment of premium under the contract, not the crediting practice.").

14

But New York Life's argument overlooks that "the last link in the chain of events creating liability"—the policyholder's decision to keep his or her policy in force through the policy's anniversary date—did not occur until January of the following year. Gen. Dynamics, 481 U.S. at 245. According to the complaint and the sample policies, New York Life was obligated to pay an Annual Dividend to a policyholder only if *two* conditions held: (1) the policyholder had paid the last premium necessary to keep the policy in force through its anniversary date, *and* (2) the policy was in force on the anniversary date. The Company has plausibly alleged, and therefore we take as true, that the first condition was satisfied—that is, that the Company deducted the Annual Dividend only with respect to those January policyholders who had already paid the premiums necessary to keep the policy in force through the policy anniversary date.

New York Life's liability also turned, however, on satisfaction of the second condition: the Company was obligated to pay the Annual Dividend *only* if the policyholder also maintained her policy in force through its anniversary date. The sample policies recognize a policyholder's right to surrender her policy for its cash value at any time. Nowhere do the policies provide that New York Life is obligated to pay an Annual Dividend if a policyholder chooses to cash in her policy before the anniversary date; instead, the policies condition payment of an Annual Dividend on the policy being "in force" on its anniversary date. See J.A. 35, 43, 62, 72, 82. New York Life could not know in December which course of action the policyholder would

15

choose the following month.  In economic circumstances favorable to her, a policyholder might decide—before the policy's anniversary date—to forgo the Annual Dividend and obtain the policy's cash value, so as to put the cash to another use or pursue a more remunerative investment option.  She was certainly free to do so.

Like the District Court, we see this dividend liability as most closely analogous to the liability for medical expenses that the taxpayer attempted to deduct as an accrued liability in General Dynamics.  Just as the taxpayer there was "liable to pay for covered medical services *only* if properly documented claims forms were filed," 481 U.S. at 244, so too was New York Life liable to pay the Annual Dividend *only* if a policyholder kept her policy in force through its anniversary date.  That many policyholders may have done so—in effect, "deciding" to maintain the policy in force simply by failing to act—does not change our analysis.  That policyholders who pay their last premium might even be "statistically certain" to keep their policies in force through the anniversary date also does not matter: the relevant inquiry is whether the liability was based on any "events that ha[d] not occurred by the close of the taxable year."  Id. at 243-44.  New York Life's policies obligated it to pay an Annual Dividend *only* if the policy remained in force on the policyholder's anniversary date.  Having adopted this structure, New York Life cannot at the same time disavow it simply to accelerate its use of the related income tax deduction.

The Company responds that Code Section 808(c) provides a deduction for policyholder dividends "paid *or accrued* during the taxable year," and argues that if

16

it must wait until the tax year of payment to deduct the Annual Dividend for January Policies, Section 808(c)'s phrase "or accrued" becomes superfluous.

To see why this argument is unpersuasive, we need look no further than our decision in <u>National Life Insurance Co. v. Commissioner</u>, 103 F.3d 5 (2d Cir. 1996), a case also addressing a life insurance company's deduction of policyholder dividends. There, National Life "guaranteed dividends on a pro rata, monthly basis." <u>Id.</u> at 6. Under this arrangement, a policyholder who terminated her policy before its anniversary date was nonetheless guaranteed and entitled to receive a pro rata monthly share of the annual dividend. <u>Id.</u> For example, a policyholder who terminated her policy three months before its anniversary date would receive seventy-five percent (nine-twelfths) of the year's annual dividend, provided that her premium payments were current at the date of termination. <u>Id.</u>

In <u>National Life</u>, we noted that "[u]nder the accrual method, most insurance companies, because they do not guarantee the payment of policyholder dividends, may not deduct those dividends until the time that such dividends are actually paid." <u>Id.</u> National Life could deduct its dividends in advance of payment, however, because under its "guaranteed dividend policy," it became "*obligated to pay* one-twelfth of the dividend each month." <u>Id.</u> (emphasis added).

17

To be sure, our decision in <u>National Life</u> ultimately turned on a different section of the Code,[11] and the language we have quoted is not binding on us here. Nonetheless, the case presents a useful factual comparison between liabilities for dividends "guaranteed . . . on a pro rata, monthly basis," <u>id.</u>, and liabilities for dividends (like those paid by New York Life) guaranteed only for policies that remained in force for the entire year. <u>National Life</u> thus demonstrates how a liability for policyholder dividends may "accrue" under Section 808(c) and be deductible in advance of payment, under Treasury Regulation § 1.461-1(a)(2)(i), without running afoul of the all-events test. [12]

New York Life also argues that a policyholder's decision to keep her policy in force does not constitute an "event" for purposes of the all-events test. In this regard, the Company relies for support on our decision in <u>Burnham v. Commissioner</u>, 878 F.2d 86 (2d Cir. 1989), a decision concerning accrual practices

---

[11] <u>National Life</u> addressed primarily the tax implications for companies of a transition from a "reserve" method of accounting to an accrual method under the 1984 Act, which disallowed the reserve method.

[12] For similar reasons, we see New York Life's case as distinguishable—if perhaps at the margins—from that considered in <u>Massachusetts Mutual Life Insurance Co. v. United States</u>, 103 Fed. Cl. 111 (2012) ("<u>Mass. Mutual</u>"), a recent decision of interest but not binding on us. In <u>Mass. Mutual</u>, the Court of Claims permitted deduction of a policyholder dividend in advance of payment where the taxpayer insurance company also required that a policy be "in force as of the anniversary date" to entitle the policyholder to a dividend payment. <u>Id.</u> at 114. There, however, the policy was considered "in force" simply "if the premiums for the policy [had been] paid through its anniversary date." <u>Id.</u> Here, by contrast, New York Life has defined eligibility for an Annual Dividend differently, requiring *both* that the policyholder have paid all premiums *and* that she not have surrendered her policy for cash prior to the policy's anniversary date. <u>See</u> Compl. ¶ 34. To the extent that the reasoning of the <u>Mass. Mutual</u> court is at odds with ours, however, we respectfully disagree with that court's approach.

18

but unrelated to the payment of policyholder dividends.  In <u>Burnham</u>, the taxpayer corporation entered into a one-time settlement agreement on a patent infringement claim.  <u>Id.</u> at 87.  That agreement required the company to make forty-eight monthly payments to the individual claimant totalling $60,000, whether or not she survived until the end of the period; if she did, the payments were to continue until her death. <u>Id.</u>  Using mortality tables to estimate how long the payee was likely to survive and what the amount of its ultimate liability was likely to be, the company, in a single tax year, claimed a deduction for the entire sum it expected to pay over the payee's life.  The Tax Court allowed the deduction, and we affirmed.

With respect to the first prong of the test, we reasoned "that the event necessary to fix the *fact* of [the company's] liability to [the payee]—namely, the settlement agreement—had occurred" by the taxable year in which the company claimed the deduction.  <u>Id.</u> at 88 (emphasis added).  And the Commissioner "d[id] not dispute that" the company's liability "satisfied the second prong of the all events test[,] . . . in effect conced[ing] that the amount of the liability could be determined with reasonable accuracy."  <u>Id.</u> at 87-88.  The company was therefore entitled to the deduction.

In addressing the argument that the payee's continued survival each year was an "event" that precluded satisfaction of the all-events test, we also stated that an "event" is "ordinarily something which marks a change in the status quo."  <u>Id.</u> at 88. New York Life seizes upon this language and argues that, with respect to its

19

dividend accrual for January policyholders, once a policyholder paid her final premium, mere continuation of the status quo would result in the company's liability for the Annual Dividend. Therefore, as in <u>Burnham</u>, nothing more was required and the deduction should be allowed.

We are not persuaded. First, in <u>Burnham</u>, the parties established the fact of the liability when they executed the settlement agreement. <u>Id.</u> at 88. Only the ultimate amount of that obligation was uncertain, and the Commissioner "in effect conceded that the amount of liability could be determined with reasonable accuracy." <u>Id.</u> Here, the amount was perhaps more certain, but the fact of liability was still tentative. Second, we see New York Life's liability for the Annual Dividend as depending upon an actual *choice* by the third-party policyholder: her decision not to redeem her policy for cash, for example, and invest her money elsewhere. In <u>Burnham</u>, by contrast, no third-party choice was at issue; the payee's survival was hardly a result of a choice, at least not in any ordinary sense. Even acknowledging that many New York Life policyholders might not daily or monthly reevaluate whether to surrender their policy, a significant decision is committed to them. Thus, the mere "continuation of the status quo" at issue in <u>Burnham</u> is unlike continuation of the status quo for New York Life.

Finally, a reading of <u>Burnham</u> that permits deduction in a taxable year of a liability that is dependent on a third party's investment decision in the following year would run afoul of the rule of <u>General Dynamics</u>, 481 U.S. at 243, the far closer

20

analogue to the facts presented here.   And surely a one-time litigation settlement payment and an insurer's annual dividend payment practice offer different contexts for assessing what it means to "continue the status quo" in the context of applying the all-events test.[13]

Accordingly, we conclude that New York Life failed to allege facts sufficient to support an inference that its deductions for the Annual Dividend for January Policyholders satisfied the all-events test.

### 3.    Application to the Minimum Dividend Liability

New York Life's practice of comparing the size of the Annual and Termination Dividends and then deducting the lesser amount in the tax year before payment also fails to satisfy the requirement that "all the events have occurred that establish the fact of the liability." Treas. Reg. § 1.461-1(a)(2)(i).  New York Life was under no contractual, statutory, or other obligation to pay a Termination Dividend when the policyholder surrendered her policy.  Without such an obligation, we conclude, the Company was not entitled to deduct the Minimum Liability Dividend in advance of payment.

---

[13] We also note that <u>Burnham</u> relied on several out-of-circuit cases that permitted similar lump-sum deductions for companies obligated to make lifetime payments as a result of tort settlements or workers' compensation laws.  <u>See</u> 878 F.2d at 88.  In the 1984 Act, Congress brought an end to this practice, requiring companies to wait to deduct the amount of settlement or workers' compensation awards until payment is made.  <u>See</u> Pub. L. 98-369, § 91(a), 98 Stat. 494, 598-99 (codified at 26 U.S.C. § 461(h)(2)(C)).

As an initial matter, it appears that New York Life bore no contractual obligation to pay a Termination Dividend when the policyholder surrendered her policy. With respect to the Termination Dividend, the Company alleged only that it "distributes a portion of its divisible surplus to owners of participating life insurance policies (if they meet certain criteria) upon the termination of the policy by death, maturity, or surrender." Compl. ¶ 48; see id. ¶ 49 ("New York Life pays termination dividend amounts on the date of termination of the Eligible Policies."); see also Appellant's Reply Br. at 13 ("For some of New York Life's policies (e.g., the Eligible Policies), this divisible surplus may be distributed through a termination dividend."). Review of the sample policies confirms that no such contractual obligation existed: the policies state only that the Company will pay an Annual Dividend if the policy is in force on the anniversary date, and a "post-mortem dividend" of an uncertain amount to the beneficiary upon the death of the insured. See J.A. 43, 72, 82; see also J.A. 35, 62. Nowhere do the provisions discussing the Company's dividend obligations mention a dividend payable in addition to the cash value otherwise due the policyholder upon surrender of the policy.[14]

Perhaps recognizing that it lacked a contractual obligation to pay a Termination Dividend upon surrender, New York Life also implies that New York Insurance Law required it to do so. As relevant here, New York law provides that

---

[14] And nowhere does the complaint allege that New York Life paid policyholders a dividend when they let their policy "lapse" by failing to pay premiums. See, e.g., J.A. 33 ("Nonpayment of Premium"). In this scenario, too, it seems the Company was not obligated to pay either an Annual or Termination Dividend.

22

"every domestic life insurance company *shall ascertain and distribute annually, and not otherwise*, the proportion of any surplus accruing upon every participating insurance policy and annuity or pure endowment contract entitled as hereinafter provided to share therein." N.Y. Ins. Law § 4231(a)(1) (emphasis added). The law also provides that a life insurance company that distributes its divisible surplus on an annual basis "*may* apportion and distribute all or any part of its accumulated surplus . . . at reasonable intervals with respect to any policy or contract or on its termination by death, maturity or surrender, as additional or extra dividends." Id. § 4231(a)(4) (emphasis added). Nothing in these provisions requires New York Life to pay a Termination Dividend upon surrender.

The Company has pointed to no source from which we may reasonably infer that its payment of the Termination Dividend upon surrender was anything other than a voluntary practice. Absent an obligation to pay a dividend when a holder surrendered her policy, we cannot say that the fact of the Minimum Dividend Liability was "firmly established" at the time of deduction. Gen. Dynamics, 481 U.S. at 243.

New York Life responds that, under Treasury Regulation § 1.446-1(c)(1)(ii)(B), the term "liability" is "not limited to items for which a legal obligation to pay exists at the time of payment." But of course, we are not examining the deductibility of the Minimum Dividend Liability at the time of *payment*: we are examining whether New York Life's claim that this amount, related to a Termination Dividend paid in the

23

following year, was deductible as accrued in the year *before* payment.  Moreover, that the Supreme Court uses the term "liability" in connection with the all-events test for accrued expenses implies very directly that, to satisfy the test, the taxpayer must be under *some* obligation to pay if it is claiming a deduction for an accrued but unpaid expense.  See, e.g., Gen. Dynamics, 481 U.S. at 242-43; Hughes Props., 476 U.S. at 600; see also Hallmark Cards, Inc. v. Comm'r, 90 T.C. 26, 34 (1988) ("The all events test is based on the existence or nonexistence of legal rights or obligations at the close of a particular accounting period, not on the probability—or even absolute certainty—that such right or obligation will arise at some point in the future."); 2 Mertens Law of Federal Income Taxation § 12A:118 (Kathleen Bicek Bezdichek ed., 2013) ("[T]he taxpayer must be under some actual or apparent obligation for the payment at the time the liability is accrued for it to be deductible as an expense.").

State law might provide the source of this obligation, as it did in Hughes Properties by precluding the casino from reducing the amount of the jackpot for which the casino would ultimately be liable.  See 476 U.S. at 602.  Alternatively, the obligation might stem from the terms of an express or implied contract; in General Dynamics, for instance, the terms of the employee medical care plan provided the source of the taxpayer's liability.  See 481 U.S. at 244.  Here, as we have explained, there was no such source.

That New York Life's Board of Directors met annually in November and "approved the payment during the following year" of a Termination Dividend does

24

not cure this defect.  Compl. ¶ 25.  Without some preexisting obligation, a board's resolution cannot convert a voluntary expense into an accrued liability for federal income tax purposes.  We addressed this issue in <u>Commissioner v. H.B. Ives Co.</u>, 297 F.2d 229 (2d Cir. 1961), where a board of directors passed a resolution setting aside a sum for the purchase of annuity contracts for employees, which the company duly purchased the following year.  The corporation claimed a deduction for the purchase price of the contracts in the taxable year in which the board passed the resolution.  <u>Id.</u> at 229-30.  We determined that the Commissioner properly denied the deduction, concluding that "neither the resolution of respondent's board of directors, nor the entry on its books, in themselves establish the proper accrual of the claimed liability."  <u>Id.</u> at 230.  The obligation became fixed for tax deductibility purposes *only* when the company actually purchased the contracts.  <u>Id.</u>

New York Life argues that <u>Ives</u> does not control, and that an "irrevocable" board resolution may fix a liability so as to satisfy the all-events test.  The Company cites several authorities in support of this proposition, including <u>Willoughby Camera Stores, Inc. v. Commissioner</u>, 125 F.2d 607 (2d Cir. 1942).  These cases are inapposite.  In <u>Willoughby</u>, for example, we upheld a company's deduction in one taxable year of an amount its Board set aside to pay employee bonuses in the following year.  <u>Id.</u> at 608.  Our conclusion that the deduction was permissible rested on a finding that the company was under an "implied contract" to pay the bonus, because employees were told upon hiring that they would receive the bonus.  <u>Id.</u>; <u>see</u>

also <u>Champion Spark Plug Co. v. Comm'r</u>, 30 T.C. 295, 296-98 (1958), <u>aff'd</u>, 266 F.2d 347 (6th Cir. 1959) (finding that a board resolution to pay an employee post-employment compensation satisfied the all-events test where the employee had been informed upon hiring that he would be eligible for a pension plan and life insurance). Unlike the employer-employee context we considered in <u>Willoughby</u>, we see no basis for finding an implied contractual obligation binding New York Life to pay a Termination Dividend upon surrender.

New York Life has thus failed to allege that it had a contractual, statutory, or other obligation to pay a Termination Dividend upon surrender, and we find unpersuasive its argument that no such obligation was necessary. Without establishing "the fact of the liability," the Company has not met the all-events test for its Minimum Dividend Liability. Contrary to the Company's contention, whether the Company in fact paid a Termination Dividend upon surrender in the relevant years is of no import.[15] For purposes of the all-events test, the relevant inquiry is whether, for the taxable years in question, New York Life was obligated to pay the Termination Dividend to certain policyholders—and therefore, whether it bore a

---

[15] New York Life also argues that, in <u>National Life</u>, the IRS permitted and we affirmed "deductions relating to [the insurer's] non-contractual '*practice*[ ]'" of guaranteeing prorated dividends. Appellant's Reply Br. at 14 (quoting <u>National Life</u>, 103 F.3d at 6) (emphasis added). But in <u>National Life</u>, the government stipulated that the insurer's practice made the prorated dividend payments "guaranteed"; our Court, having no occasion to consider that issue, treated the practice as sufficient to fix the liability for federal tax accrual purposes. <u>See, e.g.</u>, 103 F.3d at 6 ("National Life followed a practice whereby it *guaranteed* dividends on a pro rata, monthly basis." (emphasis added)); <u>id.</u> ("[U]nder National Life's guaranteed dividend policy, National Life becomes *obligated* to pay one-twelfth of the dividend each month." (emphasis added)); <u>id.</u> ("[I]f a policy terminated three months before the anniversary date . . . the policyholder would be *entitled* to seventy-five percent . . . of the dividend for that policy year." (emphasis added)).

26

fixed liability for a Minimum Dividend for the years in which the deduction was claimed. We conclude that, given the allegations in the complaint, the answer is no.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the District Court dismissing New York Life's complaint.