13-1607-cv
*MiniFrame Ltd. v. Microsoft Corp.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of December, two thousand thirteen.

PRESENT: AMALYA L. KEARSE,
DENNIS JACOBS,
CHESTER J. STRAUB,
*Circuit Judges.*

_____

MINIFRAME LTD.,
*Plaintiff-Appellant*,

v.                                              13-1607

MICROSOFT CORPORATION,
*Defendant-Appellee.*

_____

**FOR APPELLANT:**                    ROBERT W. MORRIS (Michael S. Oberman, Francesca C. Butnick, *on the brief*), Kramer Levin Naftalis & Frankel LLP, New York, NY.

**FOR APPELLEE:**                    ROBERT A. ROSENFELD (Howard M. Ullman; Richard S. Goldstein, Orrick, Herrington & Sutcliffe LLP, New York, NY; David F. Smutny, Orrick, Herrington & Sutcliffe LLP, Washington, DC *on the brief*), Orrick, Herrington & Sutcliffe LLP, San Francisco, CA.

Appeal from the United States District Court for the Southern District of New York (Richard J. Sullivan, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

This appeal concerns three pieces of software: plaintiff MiniFrame Ltd.'s SoftXpand, defendant Microsoft Corporation's competing product called MultiPoint Server, and Microsoft's Windows operating system.

For a time, Microsoft's Windows license required customers to install and use Windows on only one computer. SoftXpand allows multiple users to simultaneously access a single copy of Windows on a single computer. Users

need only a workstation with basic peripheral hardware such as a monitor, mouse, and keyboard. Because only one computer is involved, using SoftXpand did not violate the Windows license. Microsoft responded to the new technology by changing its licensing terms to prohibit Windows from being used by more than one user at a time, rather than restricting use on a per computer basis.

MiniFrame argues that Microsoft's conduct violated Section 2 of the Sherman Act, 15 U.S.C. § 2, and related state laws. The District Court (Richard J. Sullivan, *Judge*) dismissed MiniFrame's complaint, and we **AFFIRM** that decision. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

"We review the grant of a motion to dismiss *de novo*, accepting as true the complaint's factual assertions and drawing all reasonable inferences in the plaintiff's favor. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *N.Y. Life Ins. Co. v. United States*, 724 F.3d 256, 261 (2d Cir. 2013) (internal citations and quotation marks omitted).

MiniFrame presents two theories of anticompetitive conduct: (I) refusal to deal and (II) predatory pricing.

3

**I.      Refusal to Deal**

MiniFrame first argues that Microsoft's single user restriction is a "refusal to deal" pursuant to *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985) and *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S 398 (2004). "[A]s a general matter, the Sherman Act does not restrict the long recognized right of a trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." *Trinko*, 540 U.S. at 408 (internal quotation marks and brackets omitted). There is a limited exception to that right, which "applies when a monopolist seeks to terminate a prior (voluntary) course of dealing with a competitor." *In re Elevator Antitrust Litig.*, 502 F.3d 47, 53 (2d Cir. 2007) (per curiam).

MiniFrame does not allege that Microsoft had any prior dealing with a competitor. Rather, MiniFrame alleges that Microsoft changed the terms by which Microsoft licenses its product to its customers. In fact, according to MiniFrame, Microsoft never officially approved the use of SoftXpand. Thus, MiniFrame's allegations do not fit within the *Trinko*/*Aspen Skiing* refusal to deal exception. We do not endorse and need not address the District Court's

4

alternative rationale that Microsoft's conduct is immune from antitrust liability based on intellectual property law.

**II.    Predatory Pricing**

MiniFrame also argues that Microsoft predatorily prices MultiPoint. "[F]irms may not charge 'predatory' prices—below-cost prices that drive rivals out of the market and allow the monopolist to raise its prices later and recoup its losses." *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 448 (2009). "[T]o prevail on a predatory pricing claim, a plaintiff must demonstrate that: (1) the prices complained of are below an appropriate measure of its rival's costs; and (2) there is a dangerous probability that the defendant will be able to recoup its investment in below-cost prices." *Id.* at 451 (internal quotation marks omitted).

MiniFrame's complaint does not satisfy the first prong because it does not provide any measure of cost. Rather, MiniFrame compares retail prices: alleging that Microsoft charges less for a bundle that includes MultiPoint and Windows than it does for Windows alone. Since there is no allegation that Microsoft is pricing below cost, MiniFrame fails to state a claim based on predatory pricing.[1]

---

[1]     We only consider the theories of refusal to deal and predatory pricing. We do not address monopoly leveraging. *See Law Offices of Curtis V. Trinko, L.L.P. v.*

**III.    State Law Claims**

MiniFrame's state antitrust law claims under Washington Revised Code § 19.86.040 and New York's Donnelly Act, N.Y. Gen. Bus. Law § 340, fail for the same reasons its Sherman Act claims fail.  And because MiniFrame does not show an antitrust violation, its tortious interference claim fails as well.  *See Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004) ("[W]here a suit is based on interference with a nonbinding relationship, . . . as a general rule, the defendant's conduct must amount to a crime or an independent tort."*).*  Finally, MiniFrame does not state a claim based on Washington Revised Code § 19.86.020.  MiniFrame has not shown that Microsoft's conduct had "a capacity to deceive a substantial portion of the public" or that it "constitutes a per se unfair trade practice."  *See Hangman*

---

*Bell Atl. Corp.*, 305 F.3d 89, 108 (2d Cir. 2002), *rev'd*, *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S 398, 415 n.4 (2004).  Counsel stated at oral argument that MiniFrame did not present that theory to us or to the District Court.  Oral Arg. Tr. at 9:7 ("We didn't argue monopoly leveraging.").

Similarly, we do not consider bundled discounting, which was also not presented to us.  *See Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883 (9th Cir. 2008); *LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003) (en banc).

Nor do we consider tying under Section 1 of the Sherman Act or price discrimination under Section 2(a) of the Clayton Act as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a).  MiniFrame's complaint did not set forth claims under those statutes.

*Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 785-86 (1986) (en banc).[2]

For the foregoing reasons, and finding no merit in MiniFrame's other arguments, we hereby **AFFIRM** the judgment of the District Court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

---

[2] "MiniFrame does not appeal from the dismissal of what was Count X," an unfair competition claim.  *See* Appellant's Br. at 16 n.5 (incorrectly describing Count X as an unjust enrichment claim).